## IN THE UNITED STATES DISTRICT COURT
## FOR THE DISTRICT OF COLORADO

Civil Action No.

JOSEPH SHERIDAN,

      Plaintiff,

v.

DICERNA PHARMACEUTICALS, INC.,
DOUGLAS M. FAMBROUGH, III,
J. KEVIN BUCHI,
STEPHEN DOBERSTEIN,
MARTIN FREED,
PATRICK M. GRAY,
STEPHEN J. HOFFMAN,
ADAM M. KOPPEL,
MARC KOZIN, and
CYNTHIA SMITH,

      Defendants.

---

## COMPLAINT AND JURY DEMAND

---

Plaintiff Joseph Sheridan ("Plaintiff"), by and through his undersigned counsel, for his complaint against defendants, alleges upon personal knowledge with respect to himself, and upon information and belief based upon, *inter alia*, the investigation of counsel as to all other allegations herein, as follows:

### NATURE OF THE ACTION

1.    Plaintiff brings this action against Dicerna Pharmaceuticals, Inc. ("Dicerna" or the "Company") and the members of its Board of Directors (the "Board" or the "Individual Defendants") for their violations of Sections 14(d)(4), 14(e) and 20(a) of the Securities Exchange Act of 1934 (the "Exchange Act"), 15 U.S.C. §§ 78n(d)(4), 78n(e), 78t(a), and U.S. Securities and Exchange Commission ("SEC") Rule 14d-9, 17 C.F.R. §240.14d-9(d) ("Rule 14d-9"), and to

enjoin the expiration of a tender offer (the "Tender Offer") on a proposed transaction, pursuant to which Dicerna will be acquired by Novo Nordisk A/S ("Novo"), through Novo's subsidiary NNUS New Research, Inc. ("Purchaser") (the "Proposed Transaction").

2.      On November 18, 2021, Dicerna issued a press release announcing that it had entered into an Agreement and Plan of Merger (the "Merger Agreement") dated November 17, 2021, to sell Dicerna to Novo.  Under the terms of the Merger Agreement, Novo will acquire all outstanding shares of Dicerna for $38.25 per share in cash (the "Offer Price").  Pursuant to the Merger Agreement, Purchaser commenced the Tender Offer on November 24, 2021.  The Tender Offer is scheduled to expire at one minute after 11:59 p.m., Eastern Time, on December 22, 2021.

3.      On November 24, 2021, Dicerna filed a Solicitation/Recommendation Statement on Schedule 14D-9 (the "Recommendation Statement") with the SEC.  The Recommendation Statement, which recommends that Dicerna stockholders tender their shares in the Tender Offer, omits or misrepresents material information concerning, among other things: (i) Dicerna management's financial projections; (ii) the data and inputs underlying the financial valuation analyses that support the fairness opinions provided by the Company's financial advisors, Centerview Partners LLC ("Centerview") and SVB Leerink LLC ("SVB Leerink"); and (iii) Company insiders' potential conflicts of interest.  Defendants authorized the issuance of the false and misleading Recommendation Statement in violation of Sections 14(d), 14(e) and 20(a) of the Exchange Act.

4.      In short, the Proposed Transaction will unlawfully divest Dicerna's public stockholders of the Company's valuable assets without fully disclosing all material information concerning the Proposed Transaction to Company stockholders.  To remedy defendants' Exchange

Act violations, Plaintiff seeks to enjoin the expiration of the Tender Offer unless and until such problems are remedied.

## JURISDICTION AND VENUE

5.      This Court has jurisdiction over the claims asserted herein for violations of Sections 14(a) and 20(a) of the Exchange Act and SEC Rule 14a-9 promulgated thereunder pursuant to Section 27 of the Exchange Act, 15 U.S.C. § 78aa, and 28 U.S.C. §1331 (federal question jurisdiction).

6.      This Court has jurisdiction over the defendants because each defendant is either a corporation that conducts business in and maintains operations within this District, or is an individual with sufficient minimum contacts with this District so as to make the exercise of jurisdiction by this Court permissible under traditional notions of fair play and substantial justice.

7.      Venue is proper in this District pursuant to 28 U.S.C. § 1391 because Plaintiff's claims arose in this District, where a substantial portion of the actionable conduct took place, where most of the documents are electronically stored, and where the evidence exists.  Dicerna maintains and operates offices and biotechnology laboratory space in this District.  Moreover, each of the Individual Defendants, as Company officers or directors, either resides in this District or has extensive contacts within this District.

## PARTIES

8.      Plaintiff is, and has been at all times relevant hereto, a continuous stockholder of Dicerna.

9.      Defendant Dicerna is a Delaware corporation, with its principal executive offices located at 75 Hayden Avenue, Lexington, Massachusetts 02421 and office space in Boulder, Colorado.  Dicerna is a biopharmaceutical company focused on the discovery, development, and

commercializing of medicines that are designed to leverage ribonucleic acid interference ("RNAi"). Dicerna's common stock is traded on the Nasdaq Global Select Market under the ticker symbol "DRNA."

10.    Defendant Douglas M. Fambrough, III ("Fambrough") has been President and Chief Executive Officer ("CEO") of the Company since May 2010, and a director since April 2007.

11.    Defendant J. Kevin Buchi ("Buchi") has been Chairman of the Board since January 2019, and a director of the Company since August 2018.

12.    Defendant Stephen Doberstein ("Doberstein") has been a director of the Company since February 2020.

13.    Defendant Martin Freed ("Freed") has been a director of the Company since June 2016.

14.    Defendant Patrick M. Gray ("Gray") has been a director of the Company since September 2019.

15.    Defendant Stephen J. Hoffman ("Hoffman") has been a director of the Company since November 2007.

16.    Defendant Adam M. Koppel ("Koppel") has been a director of the Company since April 2017.

17.    Defendant Marc Kozin ("Kozin") has been a director of the Company since January 2019.

18.    Defendant Cynthia Smith ("Smith") has been a director of the Company since August 2018.

19.     Defendants identified in paragraphs 10 to 18 are collectively referred to herein as the "Board" or the "Individual Defendants."

## OTHER RELEVANT ENTITIES

20.     Novo is a leading global healthcare company, founded in 1923 and headquartered in Denmark.  Novo seeks to drive change to defeat diabetes and other serious chronic diseases such as obesity and rare blood and endocrine disorders, doing so by pioneering scientific breakthroughs, expanding access to their medicines and working to prevent and ultimately cure disease.  Novo employs approximately 47,000 people in 80 countries and markets its products in around 170 countries.

21.     Purchaser is a Delaware corporation and a wholly owned indirect subsidiary of Novo.

## SUBSTANTIVE ALLEGATIONS

### Company Background

22.     Dicerna is a biopharmaceutical company focused on discovering, developing, and commercializing medicines that are designed to leverage RNAi to silence selectively genes that cause or contribute to disease.  Using its proprietary GalXC and GalXC-Plus RNAi technologies, Dicerna is committed to developing RNAi-based therapies with the potential to treat both rare and more prevalent diseases.  By silencing disease-causing genes, Dicerna's GalXC platform has the potential to address conditions that are difficult to treat with other modalities.  Initially focused on disease-causing genes in the liver, Dicerna has continued to innovate and is exploring new applications of its RNAi technology with GalXC-Plus, which expands on the functionality and application of Diecerna's flagship liver-based GalXC technology to tissues and cell types outside of the liver, and has the potential to treat diseases across multiple therapeutic areas.  In addition to its own pipeline of core discovery and clinical candidates, Dicerna has established collaborative

relationships with some of the world's leading pharmaceutical companies, including Novo, Roche, Eli Lilly and Company, Alexion Pharmaceuticals, Inc., Boehringer Ingelheim International GmbH, and Alnylam Pharmaceuticals, Inc.  Between Dicerna and its collaborative partners, the Company currently has more than 20 active discovery, preclinical, or clinical programs focused on rare, cardiometabolic, viral, chronic liver, and complement-mediated diseases, as well as neurodegenerative diseases and pain.

23.     On November 9, 2021, Dicerna announced its third quarter 2021 financial results and business highlights.  Dicerna recognized $63.0 million of revenue for the third quarter 2021, compared to $48.9 million for the same period in 2020.  In August 2021, the Company announced positive top-line results from the pivotal PHYOX2 clinical trial of nedosiran, Dicerna's late-stage investigational GalXC RNAi therapeutic candidate in development for Primary Hyperoxaluria.  In September 2021, Dicerna announced that it dosed the first subjects in its Phase 1 clinical trial to assess DCR-AUD, Dicerna's investigational GalXC RNAi therapeutic candidate in development for the treatment of Alcohol Use Disorder.  Reflecting on the Company's progress and looking to the future, defendant Fambrough commented:

> We had an exciting and productive third quarter as we continued to execute and advance key initiatives that we believe help position Dicerna for multiple value-creating milestones over the next 12 to 24 months.  We look to build on this progress as we continue advancing core programs that include nedosiran for primary hyperoxaluria (PH), RG6346 for chronic hepatitis B virus (HBV) infection with Roche, belcesiran for alpha-1 antitrypsin deficiency-associated liver disease (AATLD) and DCR-AUD for alcohol use disorder (AUD).  We also look forward to unveiling the next wave of innovations from Dicerna in early 2022 with the first of several wholly owned extrahepatic programs harnessing our GalXC-Plus technology.

> Between Dicerna and our collaborative partners, we have 16 programs in preclinical or clinical development as well as more than 20 discovery-stage programs.  Given the breadth of these activities, we expect new programs to be entering the clinic, on average, one per quarter over the next two years and potentially beyond that at a similar rate.  We believe this creates the opportunity for

Dicerna to dramatically expand in the future and meaningfully advance our mission to improve the lives of patients.

**The Proposed Transaction**

24.     On November 18, 2021, Dicerna issued a press release announcing the Proposed

Transaction.  The press release states, in relevant part:

LEXINGTON, Mass.--Nov. 18, 2021-- Dicerna Pharmaceuticals, Inc. (Nasdaq: DRNA) today announced that it has entered into a definitive agreement with Novo Nordisk under which Novo Nordisk will acquire Dicerna, a biopharmaceutical company focused on the development of investigational ribonucleic acid interference (RNAi) therapeutics, for $38.25 per share in cash, which represents a total equity value of $3.3 billion and a premium of 80% to Dicerna's closing price on November 17, 2021.  The transaction was unanimously approved by the Dicerna Board of Directors and the Board of Directors of Novo Nordis.

Novo Nordisk and Dicerna have been parties to a research collaboration since 2019 to discover and develop RNAi therapies using Dicerna's proprietary GalXC™ RNAi platform technology.  The collaboration between Novo Nordisk and Dicerna encompassed the exploration of more than 30 liver cell targets with the potential to deliver multiple clinical candidates for disorders including chronic liver disease, non-alcoholic steatohepatitis (NASH), type 2 diabetes, obesity and rare diseases. Novo Nordisk expects to initiate clinical development of the first investigational RNAi therapeutic to emerge from this collaboration in 2022.

Dicerna's RNAi technology platform enables access to intracellular disease targets across hepatic and extrahepatic cell and tissue types, complementing Novo Nordisk's existing technology platforms.  This acquisition supports Novo Nordisk's strategy of developing and applying a broad range of technology platforms across all Novo Nordisk therapeutic areas.

"The acquisition of Dicerna accelerates Novo Nordisk's research within RNAi and expands the usage of the RNAi technology," said Marcus Schindler, Executive Vice President and Chief Scientific Officer of Novo Nordisk.  "We build on our successful collaboration and by combining Dicerna's state-of-the-art RNAi drug engine and intracellular delivery with our deep capabilities in disease biology understanding and tissue targeting through peptides and proteins we have the potential to expand our pipeline and deliver life-changing precision medicines for people living with chronic diseases such as diabetes, obesity, cardiovascular disease and NASH, as well as rare diseases like endocrine disorders and bleeding disorders."

"Since the start of our collaboration two years ago, the Dicerna and Novo Nordisk teams have established a strong rapport built on a foundation of mutual respect for

one another's capabilities, culture and expertise," said Douglas Fambrough, Ph.D., Founder, President and Chief Executive Officer of Dicerna. "The combination of Dicerna's expertise in RNAi and oligonucleotide therapeutics and highly skilled employees with Novo Nordisk's industry leadership in developing and commercializing medicines to treat serious chronic diseases, has the potential to significantly accelerate and expand our mission to deliver GalXC RNAi therapies for the benefit of patients and all our stakeholders."

Under the terms of the agreement, Novo Nordisk, through a subsidiary, will initiate a tender offer to acquire all outstanding shares of Dicerna common stock at a price of $38.25 per share in cash. The closing of the tender offer will be subject to certain conditions, including the tender of shares representing at least a majority of the total number of Dicerna's outstanding shares, the expiration of the waiting period under the Hart-Scott-Rodino Antitrust Improvements Act and other customary conditions. Upon the successful completion of the tender offer, Novo Nordisk's acquisition subsidiary will be merged into Dicerna, and any remaining shares of common stock of Dicerna will be cancelled and converted into the right to receive the same $38.25 per share price payable in the tender offer. The transaction is expected to close in the fourth quarter of 2021.

Novo Nordisk is represented by Evercore as exclusive financial advisor and Davis Polk & Wardwell LLP as legal advisor. For Dicerna, Centerview Partners LLC is acting as lead financial advisor, SVB Leerink is acting as financial advisor, and Skadden, Arps, Slate, Meagher & Flom LLP and Goodwin Procter LLP are acting as legal advisors.

**Insiders' Interests in the Proposed Transaction**

25.   Dicerna insiders are the primary beneficiaries of the Proposed Transaction, not the Company's public stockholders. The Board and the Company's executive officers are conflicted because they will have secured unique benefits for themselves from the Proposed Transaction not available to Plaintiff and the public stockholders of Dicerna.

26.   Notably, Company insiders stand to reap substantial financial benefits for securing the deal with Novo. The following table sets forth the cash payments the Company's executive officers and directors will receive in connection with tendering their shares in the Tender Offer:

| Name of Executive Officer | Number of Shares Owned (#) | Cash Consideration Payable in Respect of Shares ($) |
|---|---|---|
| Douglas M. Fambrough, III, Ph.D | 43,164 | 1,651,023 |
| Bob D. Brown, Ph.D. | 267 | 10,213 |
| Douglas W. Pagán | 6,327 | 242,008 |
| James B. Weissman | 16,000 | 612,000 |
| Ling Zeng, J.D. | 3,222 | 123,242 |
| Rob Ciappenelli, M.B.A. | 3,773 | 144,317 |
| Shreeram Aradhye, M.D. | 4,969 | 190,064 |

| Name of Director | Number of Shares Owned (#) | Cash Consideration Payable in Respect of Shares ($) |
|---|---|---|
| Adam M. Koppel, M.D., Ph.D. | 3,083,570 | 117,946,553 |
| Cynthia Smith | 3,333 | 127,487 |
| J. Kevin Buchi | 4,666 | 178,475 |
| Marc Kozin | 11,333 | 433,487 |
| Martin Freed, M.D. | 3,333 | 127,487 |
| Patrick M. Gray | 3,333 | 127,487 |
| Stephen Doberstein, Ph.D. | 3,333 | 127,487 |
| Stephen J. Hoffman, M.D., Ph.D | 16,157 | 618,005 |
| All executive officers and directors as a group (15 persons) | 3,206,780 | 122,659,335 |

27.     Moreover, upon consummation of the Proposed Transaction, all vested and unvested Company options and Company restricted stock units ("Company RSUs") will be converted into the right to receive cash payments.  The following tables set forth the value of cash amounts payable in respect of Company options upon consummation of the merger:

| Name of Executive Officer | Number of Shares Subject to Vested Company Options (#) | Cash Consideration for Vested Company Options ($) | Number of Shares Subject to Unvested Company Options (#) | Cash Consideration for Unvested Company Options ($) |
|---|---|---|---|---|
| Douglas M. Fambrough, III, Ph.D.[1] | 2,450,074 | 66,356,051 | 437,026 | 7,939,869 |
| Bob D. Brown, Ph.D. | 642,724 | 15,389,374 | 156,726 | 2,867,265 |
| Douglas W. Pagán | 47,085 | 792,034 | 85,465 | 1,401,995 |
| James B. Weissman | 550,352 | 13,152,438 | 156,726 | 2,867,264 |
| Ling Zeng, J.D. | 37,099 | 663,861 | 90,846 | 1,591,540 |
| Rob Ciappenelli, M.B.A. | 215,374 | 4,450,086 | 201,126 | 3,867,965 |
| Shreeram Aradhye, M.D. | 51,735 | 943,505 | 124,035 | 2,220,821 |

1  Includes awards held in trust.

| Name of Director | Number of Shares Subject to Vested Company Options (#) | Cash Consideration for Vested Company Options ($) | Number of Shares Subject to Unvested Company Options (#) | Cash Consideration for Unvested Company Options ($) |
|---|---|---|---|---|
| Adam M. Koppel M.D., Ph.D. | 122,500 | 3,247,700 | 7,500 | 58,350 |
| Cynthia Smith | 72,500 | 1,465,450 | 7,500 | 58,350 |
| J. Kevin Buchi | 93,833 | 1,924,642 | 8,167 | 74,438 |
| Marc Kozin | 70,415 | 1,518,445 | 9,585 | 116,605 |
| Martin Freed, M.D. | 122,500 | 3,252,950 | 7,500 | 58,350 |
| Patrick Gray | 41,246 | 756,542 | 13,754 | 208,008 |
| Stephen Doberstein, Ph.D. | 37,078 | 637,996 | 17,922 | 294,304 |
| Stephen J. Hoffman, M.D., Ph.D. | 167,500 | 4,110,300 | 7,500 | 58,350 |

The following tables set forth the value of cash amounts payable in respect of Company RSUs

upon consummation of the merger:

| Name of Executive Officer | Number of Shares Subject to Company RSUs (#) | Cash Consideration for Company RSUs ($) |
|---|---|---|
| Douglas M. Fambrough, III, Ph.D. | 101,100 | 3,867,075 |
| Bob D. Brown, Ph.D. | 37,275 | 1,425,769 |
| Douglas W. Pagán | 26,625 | 1,018,406 |
| James B. Weissman | 37,725 | 1,425,769 |
| Ling Zeng, J.D. | 21,357 | 816,905 |
| Rob Ciappenelli, M.B.A. | 27,600 | 1,055,700 |
| Shreeram Aradhye, M.D. | 29,588 | 1,131,741 |

| Name of Director | Number of Shares Subject to Company RSUs (#) | Cash Consideration for Company RSUs ($) |
|---|---|---|
| Adam M. Koppel M.D., Ph.D. | 3,333 | 127,487 |
| Cynthia Smith | 3,333 | 127,487 |
| J. Kevin Buchi | 3,333 | 127,487 |
| Marc Kozin | 3,333 | 127,487 |
| Martin Freed, M.D. | 3,333 | 127,487 |
| Patrick Gray | 3,333 | 127,487 |
| Stephen Doberstein, Ph.D. | 3,333 | 127,487 |
| Stephen J. Hoffman, M.D., Ph.D. | 3,333 | 127,487 |

28.     Further, in connection with the Merger Agreement, Dicerna and Novo have agreed that Dicerna may, prior to the closing, pay 2021 annual cash bonuses at the greater of target and actual performance.  The following table sets forth the cash payments Dicerna's executive officers are expected to be paid in respect of their 2021 annual cash bonuses:

| Name | Estimated 2021 Annual Bonus ($) |
|---|---|
| Douglas M. Fambrough, III, Ph.D. | 376,404 |
| Bob D. Brown, Ph.D. | 224,902 |
| James B. Weissman | 209,210 |
| Ling Zeng, J.D. | 163,945 |
| Rob Ciappenelli, M.B.A. | 172,013 |
| Shreeram Aradhye, M.D. | 238,988 |

29.     Additionally, if they are terminated in connection with the Proposed Transaction, Dicerna's executive officers stand to receive substantial cash severance payments, as set forth in the following table:

| Name | Potential Cash Severance ($) |
|---|---|
| Douglas M. Fambrough, III, Ph.D. | 1,505,615 |
| Bob D. Brown, Ph.D. | 724,685 |
| Douglas W. Pagán | 606,357 |
| James B. Weissman | 674,122 |
| Ling Zeng, J.D. | 573,807 |
| Rob Ciappenelli, M.B.A. | 602,046 |
| Shreeram Aradhye, M.D. | 770,072 |

**The Recommendation Statement Contains Material Misstatements or Omissions**

28.     The defendants filed a materially incomplete and misleading Recommendation Statement with the SEC and disseminated it to Dicerna's stockholders.  The Recommendation Statement misrepresents or omits material information that is necessary for the Company's stockholders to make an informed decision whether to tender their shares in the Tender Offer or seek appraisal.

29.     Specifically, as set forth below, the Recommendation Statement fails to provide Company stockholders with material information or provides them with materially misleading information concerning: (i) the Company's financial projections; (ii) the data and inputs underlying the financial valuation analyses performed by the Company's financial advisors, Centerview and SVB Leerink; and (iii) Company insiders' potential conflicts of interest. Accordingly, Dicerna stockholders are being asked to vote in favor of the Proposed Transaction or seek appraisal without all material information at their disposal.

*Material Omissions Concerning Dicerna's Financial Projections*

30.     The Recommendation Statement fails to disclose material information concerning the Company's financial projections.

31.     For example, the Recommendation Statement sets forth that at the September 21 and 22, 2021, Board meetings,

> Representatives of SVB Leerink reviewed certain preliminary illustrative financial analyses, which were developed using certain management forecasts related to the

> Company's proprietary and partnered programs but did not include any
> management forecasts with respect to the Company's broader RNAi platforms.
> With respect to the Company's proprietary and partnered programs, these
> management forecasts did not differ materially from the management forecasts
> reflected in the summarized scenarios below in "— *Certain Financial Projections*".

Recommendation Statement at 13.  Similarly, at an October 18, 2021, Board meeting,

> Members of Dicerna's senior management and representatives of Centerview and
> SVB Leerink reviewed financial projections and the underlying assumptions
> prepared by Dicerna's senior management relating to Dicerna's programs and
> RNAi platforms (which, other than immaterial differences, are reflected in the
> summarized scenarios below in "— *Certain Financial Projections*"), and
> representatives of Centerview and SVB Leerink reviewed preliminary financial
> analyses.

*Id*. at 13-14.  The Recommendation Statement fails to disclose a summary and quantification of

the changes made to the projections reviewed at the September 21 and 22, and October 18, 2021,

Board meetings.

33.     Additionally, the Recommendation Statement sets forth:

> [I]n connection with the evaluation of the proposed transaction with Novo and other
> strategic alternatives, Dicerna' senior management prepared certain non-
> public, unaudited prospective financial information for fiscal years 2022 through
> 2045 (the "*Management Projections*"), including with respect to nedosiran,
> belcesiran, and Dicerna's GalXC and GalXCPlus platforms which were provided
> to the Dicerna Board in connection with its consideration of the Offer and the
> Merger and to Centerview and SVB Leerink, Dicerna's financial advisors, and were
> relied upon by Centerview and SVB Leerink in connection with the rendering of
> their respective opinions to the Dicerna Board. . . .

*Id*. at 24.  The Recommendation Statement, however, fails to disclose a breakdown of the

projections with respect to nedosiran, belcesiran, and Dicerna's GalXC and GalXCPlus platforms

over the projection period.

33.     Moreover, the Recommendation Statement notes that the projections are risk

adjusted.  *See id.* at 27.  Yet, the Recommendation Statement fails to disclose a quantification of

the assumptions underlying the risk-adjusted projections.  The Recommendation Statement further

fails to disclose the non-risk-adjusted projections so Dicerna stockholders can evaluate the financial impact the Company's risk-adjustments had on the projections.

34.     The omission of this information renders the statements in the "Certain Financial Projections" section of the Recommendation Statement false and/or materially misleading in contravention of the Exchange Act.

***Material Omissions Concerning Centerview's and SVB Leerink's Financial Analyses***

35.     The Recommendation Statement fails to disclose material information concerning Centerview's and SVB Leerink's financial analyses.

36.     The Recommendation Statement describes Centerview's and SVB Leerink's fairness opinions and the various valuation analyses performed in support of their opinions. However, the description of Centerview's and SVB Leerink's fairness opinions and analyses fails to include key inputs and assumptions underlying these analyses.  Without this information, as described below, Dicerna's public stockholders are unable to fully understand these analyses and, thus, are unable to determine what weight, if any, to place on Centerview's and SVB Leerink's fairness opinions in determining whether to tender their shares in the Tender Offer or seek appraisal.

37.     With respect to Centerview's *Discounted Cash Flow Analysis*, the Recommendation Statement fails to disclose: (i) Centerview's basis for assuming a rate of free cash flow decline of 35% after December 31, 2045; (ii) quantification of the implied terminal value of the Company; and (iii) quantification of the inputs and assumptions underlying the discount rates ranging from 10.0% to 12.0%.

38.     With respect to Centerview's *Analyst Price Target Analysis*, the Recommendation Statement fails to disclose: (i) the individual price targets observed; and (ii) the sources thereof.

39.     With  respect  to  SVB  Leerink's  *Discounted  Cash  Flow  Analysis*,  the Recommendation Statement fails to disclose: (i) SVB Leerink's basis for assuming a perpetuity growth  rate  of  negative  35%;  (ii)  quantification  of  the  terminal  value  for  Dicerna;  and  (iii) quantification of the inputs and assumptions underlying the discount rates ranging from 9.0% to 11.0%.

40.     The  omission  of  this  information  renders  the  statements  in  the  "Opinions  of Dicerna's Financial Advisors" section of the Recommendation Statement false and/or materially misleading in contravention of the Exchange Act.

***Material Omissions Concerning Company Insiders' Potential Conflicts of Interest***

41.     The Recommendation Statement fails to disclose material information concerning the potential conflicts of interest faced by Company insiders.

42.     For example, the Recommendation Statement sets forth that:

> On  November  13,  2021,  Mr. Jørgensen  called  Dr. Fambrough  to  discuss  the progress  of  the  transaction  process.  Mr. Jørgensen  informed  Dr. Fambrough  that Novo's due diligence review was almost complete. The two discussed integration and employee retention following the strategic transaction. As instructed by the Dicerna Board, Dr. Fambrough informed Mr. Jørgensen of the importance of the acceleration of all employee equity awards.

*Id*. at 17.  Following this conversation, on November 16, 2021:

> Mr. Jørgensen  called  Dr. Fambrough  to  discuss  Dicerna's  request  that  Novo increase its offer to greater than $38.00 per Share. Mr. Jørgensen verbally indicated that Novo would increase its offer price to $38.25 per Share but not beyond and would agree to the treatment of equity awards proposed by Dicerna.

*Id.*  The Recommendation Statement fails to disclose: (i) when the parties first discussed the opportunity  for  employee  retention  following  the  Proposed  Transaction;  (ii)  whether  any  of Novo's proposals or indications of interest mentioned management retention in the combined company following the Proposed Transaction; and (iii) whether Novo was contemplating an offer

price higher than $38.25 per share without the condition imposed by defendant Fambrough regarding the acceleration of all employee equity awards.

43.     The omission of this information renders the statements in the "Background of the Offer and the Merger" section of the Recommendation Statement false and/or materially misleading in contravention of the Exchange Act.

44.     The Individual Defendants were aware of their duty to disclose the above-referenced omitted information and acted negligently (if not deliberately) in failing to include this information in the Recommendation Statement.  Absent disclosure of the foregoing material information prior to the expiration of the Tender Offer, Plaintiff and the other stockholders of Dicerna will be unable to make a sufficiently informed tender or appraisal decision in connection with the Proposed Transaction and are thus threatened with irreparable harm warranting the injunctive relief sought herein.

## CLAIMS FOR RELIEF

### COUNT I

**Claims Against All Defendants for Violations
of Section 14(d) of the Exchange Act and SEC Rule 14d-9**

30.     Plaintiff repeats all previous allegations as if set forth in full.

31.     Defendants have caused the Recommendation Statement to be issued with the intention of soliciting Dicerna stockholders to tender their shares in the Tender Offer.

32.     Section 14(d)(4) of the Exchange Act and SEC Rule 14d-9 promulgated thereunder require full and complete disclosure in connection with tender offers.

33.     The Recommendation Statement violates Section 14(d)(4) and Rule 14d-9 because it omits material facts, including those set forth above, which omission renders the Recommendation Statement false and/or misleading.

34.     Defendants knowingly or with deliberate recklessness omitted the material information identified above from the Recommendation Statement, causing certain statements therein to be materially incomplete and therefore misleading.   Indeed, while defendants undoubtedly had access to and/or reviewed the omitted material information in connection with approving the Proposed Transaction, they allowed it to be omitted from the Recommendation Statement, rendering certain portions of the Recommendation Statement materially incomplete and therefore misleading.

35.     The misrepresentations and omissions in the Recommendation Statement are material to Plaintiff and the other stockholders of Dicerna, who will be deprived of their right to make an informed decision whether to tender their shares or seek appraisal if such misrepresentations and omissions are not corrected prior to the expiration of the Tender Offer. Plaintiff has no adequate remedy at law.   Only through the exercise of this Court's equitable powers can Plaintiff be fully protected from the immediate and irreparable injury that defendants' actions threaten to inflict.

## COUNT II

### Claims Against All Defendants for Violations of Section 14(e) of the Exchange Act

36.     Plaintiff repeats all previous allegations as if set forth in full.

37.     Defendants violated Section 14(e) of the Exchange Act by issuing the Recommendation Statement in which they made untrue statements of material facts or failed to state all material facts necessary in order to make the statements made, in light of the circumstances under which they are made, not misleading, or engaged in deceptive or manipulative acts or practices, in connection with the Tender Offer.

38.     Defendants knew that Plaintiff would rely upon their statements in the Recommendation Statement in determining whether to tender his shares pursuant to the Tender Offer or seek appraisal.

39.     As a direct and proximate result of these defendants' unlawful course of conduct in violation of Section 14(e) of the Exchange Act, absent injunctive relief from the Court, Plaintiff has sustained and will continue to sustain irreparable injury by being denied the opportunity to make an informed decision in deciding whether or not to tender his shares or seek appraisal.

## COUNT III

### Claims Against the Individual Defendants for
### Violation of Section 20(a) of the Exchange Act

40.     Plaintiff repeats all previous allegations as if set forth in full.

41.     The Individual Defendants acted as controlling persons of Dicerna within the meaning of Section 20(a) of the Exchange Act as alleged herein.  By virtue of their positions as officers or directors of Dicerna and participation in or awareness of the Company's operations or intimate knowledge of the false statements contained in the Recommendation Statement filed with the SEC, they had the power to influence and control and did influence and control, directly or indirectly, the decision-making of the Company, including the content and dissemination of the various statements which Plaintiff contends are false and misleading.

42.     Each of the Individual Defendants was provided with or had unlimited access to copies of the Recommendation Statement and other statements alleged by Plaintiff to be misleading prior to or shortly after these statements were issued and had the ability to prevent the issuance of the statements or cause the statements to be corrected.

43.     In particular, each of the Individual Defendants had direct and supervisory involvement in the day-to-day operations of the Company, and, therefore, is presumed to have had

the power to control or influence the particular transactions giving rise to the securities violations as alleged herein, and exercised the same.  The Recommendation Statement at issue contains the unanimous recommendation of each of the Individual Defendants to approve the Proposed Transaction.  They were, thus, directly involved in the making of this document.

44.     In addition, as the Recommendation Statement sets forth at length, and as described herein, the Individual Defendants were each involved in negotiating, reviewing, and approving the Proposed Transaction.  The Recommendation Statement purports to describe the various issues and information that they reviewed and considered — descriptions which had input from the Individual Defendants.

45.     By virtue of the foregoing, the Individual Defendants have violated section 20(a) of the Exchange Act.

46.     Plaintiff has no adequate remedy at law.  Only through the exercise of this Court's equitable powers can Plaintiff be fully protected from the immediate and irreparable injury that defendants' actions threaten to inflict.

## PRAYER FOR RELIEF

WHEREFORE, Plaintiff demands judgment and preliminary and permanent relief, including injunctive relief, in his favor on behalf of Dicerna, and against defendants, as follows:

A.     Preliminarily and permanently enjoining defendants and all persons acting in concert with them from proceeding with, consummating, or closing the Proposed Transaction;

B.     In the event defendants consummate the Proposed Transaction, rescinding it and setting it aside or awarding rescissory damages to Plaintiff;

C.     Awarding Plaintiff the costs of this action, including reasonable allowance for Plaintiff's attorneys' and experts' fees; and

D.      Granting such other and further relief as this Court may deem just and proper.

**JURY DEMAND**

Plaintiff demands a trial by jury on all claims and issues so triable.

Dated: December 3, 2021

                                   Respectfully submitted,

                                   */s/ Richard A. Acocelli*

                                   Richard A. Acocelli
                                   **WEISSLAW LLP**
                                   305 Broadway, 7th Floor
                                   New York, NY 10007
                                   Telephone: (212) 682-3025
                                   Facsimile: (212) 682-3010
                                   Email: racocelli@weisslawllp.com

                                   *Attorneys for Plaintiff*